# ATTACHMENT 1

1  SHAWN G. HANSEN (SBN 197033)
   shansen@nixonpeabody.com
2  SETH D. LEVY (SBN 217638)
   slevy@nixonpeabody.com
3  STACI JENNIFER RIORDAN (SBN 232659)
   sriordan@nixonpeabody.com
4  VINCENT K. YIP (SBN 170665)
   vyip@nixonpeabody.com
5  PETER J. WIED (SBN 198475)
   pwied@nixonpeabody.com
6  **NIXON PEABODY LLP**
   300 South Grand Avenue, Suite 4100
7  Los Angeles, CA 90071-3151
   Telephone: (213) 629-6000
8  Facsimile: (213) 629-6001

9  MATTHEW A. RICHARDS (SBN 233166)
   mrichards@nixonpeabody.com
10 TRACY STEINDEL ICKES (SBN 317380)
   tickes@nixonpeabody.com
11 **NIXON PEABODY LLP**
   One Embarcadero Center, Suite 3200
12 San Francisco, CA 94111-3739
   Telephone: (415) 984-8200
13 Facsimile: (415) 984-8300

14 Attorneys for Plaintiff
   **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

15

16                    UNITED STATES DISTRICT COURT

17                    CENTRAL DISTRICT OF CALIFORNIA

18

19 | **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**, | Case No. 2:19-cv-6572 |

20

21 Plaintiff,                        **COMPLAINT FOR PATENT INFRINGEMENT**

22 vs.

23 **TARGET CORPORATION**,           **DEMAND FOR JURY TRIAL**

24 Defendant.

25

26

27

28

**COMPLAINT**

Plaintiff The Regents of the University of California ("The Regents") alleges as follows for its Complaint against Defendant Target Corporation ("Defendant"):

## INTRODUCTION

1. This is an action for patent infringement arising under 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This case is about protecting the reinvention of the light bulb by a Nobel laureate-led team at the University of California, Santa Barbara ("UC Santa Barbara"), the theft of that technology by unlicensed foreign manufacturers, and the Defendant's trafficking in infringing imports without proper compensation to The Regents.

3. Specifically, at issue is the Defendant's infringement of The Regents' United States Patents 7,781,789 ("'789 patent"), 9,240,529 ("'529 patent"), 9,859,464 ("'464 patent"), and 10,217,916 ("'916 patent") (collectively, the "Asserted Patents"), which are fundamental to a new generation of light bulbs commonly referred to as "filament" LED light bulbs (illustrated below).



**Filament LED Light Bulb**          **Filament LED**

- 1 -

**COMPLAINT**

4. The Regents brings this Complaint to spearhead a broader, national response to the existential threat to university technology transfer that is posed by the widespread disregard for university patent rights that is prevalent today.

5. Universities and research institutions across the country have established technology transfer offices to identify, protect, and license the intellectual property developed by their faculty, students, and other researchers. These offices sit at the interface between academia and the private sector. They leverage an interdisciplinary collection of skills to transform the fruits of a university's research into commercial products and services by establishing and nurturing relationships between the university, where the research is conducted, and entities in the private sector, which manufacture and sell products embodying the university's research. While as much an art as it is a science, the success of any technology transfer program is predicated on the private sector respecting the university's intellectual property rights.

6. However, overseas manufacturers routinely take unfair advantage of academic openness. They exploit university intellectual property abroad with impunity and then traffic infringing goods into the U.S. market through what are often complex supply chains. By flooding the domestic market with unauthorized products, they cripple the ability of technology transfer programs to effectively license universities' intellectual property. This undermines the universities' rightful opportunity to share in the revenue generated through commercialization of their intellectual property – revenue that would support further research, education, and development of cutting-edge technologies and new scientific insights that benefit the public.

7. This case is a classic example of that very scenario. The Regents has expended and continues to expend significant resources to engineer, research, develop, and license the inventions that are the subject of this case, only to see those inventions stolen by unlicensed foreign manufacturers, imported into the

**COMPLAINT**

U.S., and sold to an unwitting domestic consuming public by retailers that have the power to require their supply chains to respect The Regents' intellectual property but have not done so.

8. Filament LED light bulbs may include a variety of filament LED configurations while still infringing the Asserted Patents, such as, without limitation, different shapes of filaments (*e.g.*, spiral instead of linear), different numbers of filaments, and different lengths of filaments. All such configurations are included in the term "filament LED" as used in this Complaint.

9. The Regents has obtained and analyzed samples of filament LED light bulbs across a variety of retailers and brands, including but not limited to the Defendant and its Threshold branded products. All filament LED light bulbs The Regents has analyzed to date infringe at least one claim of the Asserted Patents. Accordingly, The Regents is informed and believes that filament LEDs have been commoditized by mass unlicensed manufacture and that substantially all filament LED light bulbs from unlicensed sources infringe at least one claim of the Asserted Patents.∗

10. The Regents brings this Complaint seeking just compensation for the use of the inventions claimed in the Asserted Patents consistent with The Regents' duty to serve as trustee for the people of the State of California and as steward of the University of California in fulfillment of its educational, research, and public service missions in the best interests of the people of the State of California.

11. UC Santa Barbara gave the Defendant notice of infringement of the '789 and '529 patents, among others, in a certified letter dated December 20, 2017, a copy of which is attached as Exhibit A.

---

∗Asterisks indicate allegations made upon information and belief.

## BACKGROUND OF FILAMENT LED LIGHT BULBS

12. The invention of the incandescent light bulb more than a century ago so profoundly changed the world that the light bulb became the very icon of invention. Reflecting Thomas Edison's enduring fame for inventing the light bulb, many products on the market today that infringe the Asserted Patents are called "Edison" or "vintage" LED light bulbs because they resemble Edison's iconic light bulbs with glowing filaments visible inside glass bulbs.

13. The patented filament LED technology invented at UC Santa Barbara enables light bulbs that replace traditional incandescent light bulbs and, in contrast, use a tiny fraction of the energy, don't get hot, break less easily, and last up to ten or twenty years. Further, unlike compact fluorescent light bulb substitutes for incandescent light bulbs, the patented filament LED technology does not contain the toxic material mercury.*

14. Over the life of a filament LED light bulb, the inventions of the Asserted Patents yield savings in energy and replacement costs, relative to comparable incandescent light bulbs, that far exceed the cost of the filament LED light bulb itself. For example, the packaging of the Defendant's infringing Threshold Dimmable Edison LED Vintage Style Bulb, Model: ST19/LEDG2/TAR, DPCI: 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, touts 86% energy savings and ten times the life compared with a 40-watt incandescent light bulb—in a product the Defendant sells for $11.49 as reflected in Exhibit B, discussed below.



15. Moreover, compared with other LED light bulb designs, filament LED light bulbs are more energy efficient and aesthetically pleasing due to the advantages conferred by the inventions of the Asserted Patents.*

16. The United States retail market has demonstrated tremendous customer demand for the aesthetic, economic, and environmental benefits conferred by the inventions of the Asserted Patents: while filament LED light bulbs only became widely available in the United States in about 2014 or 2015, sales of filament LED light bulbs are expected to exceed $1,000,000,000 in the United States in 2019.*

17. Unfortunately, the filament LED light bulb industry has stolen The Regents' patented technology with utter disregard for The Regents' patent rights. Substantially all of the infringing filament LED light bulbs The Regents has found on the retail market in the United States reflect China as the country of origin.

18. For that reason, among others, The Regents seeks relief in this case for retail sales of infringing filament LED light bulbs in the United States, where consumers pay a premium over comparable incandescent light bulbs because of the benefits of the inventions claimed in the Asserted Patents. As a major retailer in the United States, the Defendant has the means and responsibility to ensure the compliance of its supply chain with applicable laws. However, the Defendant has not upheld that responsibility with respect to filament LED light bulbs and instead has provided an illegal outlet for infringing products from unlicensed foreign sources, depriving The Regents of compensation to which it is lawfully entitled for the use of the inventions claimed in the Asserted Patents.

**PARTIES**

19. The Regents is a California constitutional corporation with a principal place of business in Oakland, California, and is the owner of all substantial rights in the Asserted Patents. The Regents is charged with the duty of administering the University of California as a public trust, pursuant to Article IX Section 9 of the

- 5 -

**COMPLAINT**

California Constitution. UC Santa Barbara is an internationally recognized pioneering research institution located in the Central District of California and is one of the ten campuses that make up the University of California System. All University of California actions are done in The Regents' name, including owning property such as patents and other intellectual property and entering into contracts.

20. The Defendant is a Minnesota corporation with corporate headquarters in Minneapolis, Minnesota, and with numerous retail stores located in the Central District of California. The Defendant is registered to do business in California and has appointed as its registered agent for service of process C T Corporation System at 818 West 7th Street, Suite 930, Los Angeles, California 90017.

## JURISDICTION AND VENUE

21. As alleged in Paragraph 1 pursuant to Central District of California L.R. 8-1, this Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22. This Court has personal jurisdiction over the Defendant because its contacts with the Central District of California are significant and pervasive and directly give rise to part of this dispute. The Defendant has numerous regular and established retail stores located throughout the Central District of California.

23. Venue is proper in the Central District of California under 28 U.S.C. § 1400(b) because the Defendant has engaged in infringement of the Asserted Patents, and has numerous regular and established retail store locations, throughout the Central District of California. For example, attached as Exhibit B is a copy of a receipt for infringing sales by the Defendant on May 22, 2019, at Target store #1362 located at 1800 W. Empire Ave., Burbank, California 91504.

## UC SANTA BARBARA'S WORLD CLASS LED RESEARCH

24. UC Santa Barbara proudly counts among its current and late faculty six Nobel Laureates, one Fields Medal recipient, twenty-nine members of the National Academy of Sciences, twenty-seven members of the National Academy of

1  Engineering, and thirty-one members of the Academy of Arts and Sciences.
2  UC Santa Barbara receives over $180,000,000 per year to support its research
3  efforts from both public and private sources.
4      25.    UC Santa Barbara also is the home of a world-renowned Materials
5  Department that is dedicated to solving tomorrow's problems in electronic and
6  photonic materials, inorganic materials, macromolecular and biomolecular
7  materials, and structural materials. UC Santa Barbara's Materials Department has
8  consistently ranked in the top two in the nation in various studies, including by the
9  National Research Council and U.S. News & World Report. In addition, according
10 to Thomson Reuters, Materials research at UC Santa Barbara ranks second in the
11 world in terms of citation impact—a method for comparing the quality of research.
12 The citing of a scholar's research (as represented by a published scientific paper) in
13 another researcher's published work is viewed as a strong indication of the
14 importance of the original work and the influence it might have.
15     26.    UC Santa Barbara's Materials Department has nine separate affiliated
16 research centers, including the California NanoSystems Institute, the Center for
17 Multifunctional Materials and Structures, the Center for Stem Cell Biology and
18 Engineering, the Dow Materials Institute, the Institute for Collaborative
19 Biotechnologies, the Institute for Energy Efficiency, the Materials Research
20 Laboratory, the Mitsubishi Chemical Center for Advanced Materials, and the Solid
21 State Lighting and Energy Electronics Center ("SSLEEC").
22     27.    SSLEEC is the home of nearly two decades of visionary research into
23 solid state lighting and power switching. Recognizing the need for energy-efficient
24 lighting technologies, The Regents, along with industry partners, has funded
25 groundbreaking research at SSLEEC and its predecessor entities that have led to
26 more energy-efficient solutions for lighting, cell phones, computers, appliances,
27 automobiles, industrial equipment, and power distribution systems. SSLEEC
28 research helps solve some of the world's most critical problems by meaningfully

**COMPLAINT**

reducing energy consumption and waste associated with light bulbs and other necessities of daily life.

28. SSLEEC consists of approximately a dozen faculty members, thirty graduate students, and twenty staff, including internationally recognized researchers and visiting scholars. The faculty and staff of SSLEEC and its predecessors have published thousands of peer-reviewed publications and have amassed a portfolio of over 250 issued patents. Since its inception, SSLEEC has conferred approximately 100 Ph.D. degrees.

29. Professor Shuji Nakamura is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. In 2014, Professor Nakamura was honored as the co-recipient of the Nobel Prize in Physics. He began researching high-efficiency blue LEDs (which are necessary to create white light with LEDs) in the late 1980's, and his former employer began selling white LEDs enabled by his invention in the mid-1990's. In addition to the 2014 Nobel Prize in Physics, Professor Nakamura has received numerous other awards for his work in the field of LED lighting, including the Nishina Memorial Award (1996), the Materials Research Society Medal Award (1997), the Institute of Electrical and Electronics Engineers Jack A. Morton Award (1998), the British Rank Prize (1998), the Benjamin Franklin Medal Award (2002), the Millennium Technology Prize (2006), the Czochralski Award (2007), the Prince of Asturias Award for Technical Scientific Research (2008), The Harvey Award (2009), and the Technology & Engineering Emmy Award (2012) awarded by The National Academy of Television Arts & Sciences (NATAS). He was elected as a fellow of the U.S. National Academy of Engineering in 2003. He received the 2014 Order of Culture Award in Japan and was inducted into the National Inventors Hall of Fame in 2015. That same year, Professor Nakamura received the Charles Stark Draper Prize for Engineering and the Global Energy Prize in Russia. In July 2016, he was elected to Academia Sinica, Taiwan's preeminent research institution. Professor

- 8 -

Nakamura has been a professor at UC Santa Barbara since 2000 and is an inventor of more than 200 United States patents in addition to over 175 Japanese patents. He has published over 550 papers in his field.

30. Professor Steven DenBaars is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. Professor DenBaars is The Mitsubishi Chemical Professor in Solid State Lighting & Display at UC Santa Barbara. Prior to UC Santa Barbara, he was an engineer at Hewlett-Packard Optoelectronics, where he contributed to the growth and fabrication of visible LEDs, focusing specifically on high brightness red LEDs. He joined UC Santa Barbara in 1991 and helped pioneer the field of solid-state lighting, including the first United States university demonstration of a Blue Gallium Nitride laser diode. Professor DenBaars is the recipient of the National Scientist Foundation Young Investigator Award (1994), the Institute of Electrical and Electronics Engineering Fellow Award (2005) and the IEEE Aron Kressel Award (2010). Professor DenBaars is a fellow of the National Academy of Engineering (NAE) and the National Academy of Inventors (NAI). He has published over 800 papers and is an inventor of over 175 patents.

31. Professor James Speck co-founded SSLEEC with Professors Shuji Nakamura and Steven DenBaars and is an inventor of one of the Asserted Patents. Professor Speck has been a member of the UC Santa Barbara faculty since 1990. He holds the Seoul Semiconductor Chair in Solid State Lighting at UC Santa Barbara. Professor Speck is a member of the Materials Research Society, the American Physical Society, and the Microscopy Society of America. Professor Speck received the Quantum Device Award from the International Symposium on Compound Semiconductors in 2007, was named an inaugural Materials Research Society Fellow in 2008, and received the Japanese Journal of Applied Physics Best Paper Award in 2008. In 2009, he became an American Physical Society Fellow. In 2010, he received the IEEE Photonics Society Aron Kressel Award for his work on

nonpolar and semipolar Gallium Nitride-based materials and devices. Professor Speck has authored over 600 papers and is an inventor of over 100 patents.

32. Research at SSLEEC and its predecessor entities has resulted in major technological breakthroughs in the field of solid state lighting. This research has also led to numerous successful startup companies that have created hundreds of jobs.

33. For example, in 2007, researchers at SSLEEC's predecessor fabricated a gallium nitride-based LED with the highest efficiency and output power ever reported at the time. They achieved this feat by developing an LED based on non-polar gallium nitride, which has a crystal structure arranged in the m-plane, rather than the conventional c-plane gallium nitride LEDs known at the time. These non-polar gallium nitride LEDs were more efficient and able to handle higher currents than anything available at the time.

34. As another example, in 2012, researchers at SSLEEC's predecessor achieved the world's first violet non-polar vertical-cavity surface-emitting laser ("VCSEL"), which was based on m-plane gallium nitride semiconductors. These VCSELs were able to operate at room temperature and provide high optical gain, which increases optical efficiency. This breakthrough also could result in greatly reduced manufacturing costs, to be used in a variety of applications including lighting, displays, sensors, and any technology that requires energy efficiency and a small form-factor.

35. Additionally, in 2013, SSLEEC researchers, including Professor DenBaars, developed guidelines to make it possible to optimize phosphors—a key component in white LED lighting—allowing for brighter, more efficient lights. This breakthrough put high-efficiency, high-brightness, solid-state lighting on a fast track.

36. The filament LED technology covered by the Asserted Patents is another example of the results of SSLEEC's groundbreaking research. The Asserted

**COMPLAINT**

Patents cover some of the important innovations of Professors Nakamura, DenBaars, and Speck, including those that use transparent LED structures and packaging to enable filament LED light bulbs.

## ASSERTED PATENTS

37. On August 24, 2010, the United States Patent and Trademark Office duly and properly issued the '789 patent, which is entitled "Transparent Mirrorless Light Emitting Diode". The Regents owns by assignment all rights, title, and interest in the '789 patent. A true and correct copy of the '789 patent is attached as Exhibit C to this Complaint.

38. On January 19, 2016, the United States Patent and Trademark Office duly and properly issued the '529 patent, which is entitled "Textured Phosphor Conversion Layer Light Emitting Diode". The Regents owns by assignment all rights, title, and interest in the '529 patent. A true and correct copy of the '529 patent is attached as Exhibit D to this Complaint.

39. On January 2, 2018, the United States Patent and Trademark Office duly and properly issued the '464 patent, which is entitled "Light Emitting Diode With Light Extracted From Front And Back Sides Of A Lead Frame". The Regents owns by assignment all rights, title, and interest in the '464 patent. A true and correct copy of the '464 patent is attached as Exhibit E to this Complaint.

40. On February 26, 2019, the United States Patent and Trademark Office duly and properly issued the '916 patent, which is entitled "Transparent Light Emitting Diodes". The Regents owns by assignment all rights, title, and interest in the '916 patent. A true and correct copy of the '916 patent is attached as Exhibit F to this Complaint.

## DEFENDANT'S KNOWLEDGE OF ASSERTED PATENTS

41. The Defendant has had actual knowledge of the '789 and '529 patents since no later than December 26, 2017, the date the Defendant received the notice

of infringement attached as Exhibit A, according to the certified mail return receipt included in Exhibit A.

## ACCUSED PRODUCTS

42. Each product listed below, which are reflected on the receipt attached as Exhibit B, and every other product that includes a filament LED component not more than colorably different from the filament LED components in the products listed below (collectively, the "Accused Products"), meets each and every limitation of at least one claim of each of the Asserted Patents, literally or by equivalents:*

- Threshold Dimmable Edison LED Vintage Style Bulb, Model ST19/LEDG2/TAR, DPCI 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,
- Threshold Dimmable Globe LED Vintage Style Bulb, Model G30/LEDG2/TAR, DPCI 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, and
- Threshold Dimmable Tubular LED Vintage Style Bulb 2-pack, Model T1040/LED/2/TAR, DPCI 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.

43. The Regents needs discovery from the Defendant to identify all of the Accused Products that the Defendant has used, offered to sell, sold, or imported into the United States and for which The Regents will seek relief in this case.

44. Each of the Accused Products listed above is labeled on the product or packaging with China as the country of origin.

## CLAIM I: INFRINGEMENT OF THE '789 PATENT

45. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 44 as if fully set forth herein.

46. The Defendant has infringed at least one claim of the '789 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

47. Attached as Exhibit G is a claim chart demonstrating infringement of

representative claims of the '789 patent by a representative Accused Product sold by the Defendant, namely, the Threshold Dimmable Edison LED Vintage Style Bulb, Model ST19/LEDG2/TAR, DPCI 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. Exhibit G is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from the Defendant regarding all of the Accused Products it has used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '789 patent that are infringed and the Accused Products for which The Regents seeks relief.

48. The Defendant's infringement of the '789 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

## CLAIM II: INFRINGEMENT OF THE '529 PATENT

49. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 48 as if fully set forth herein.

50. The Defendant has infringed at least one claim of the '529 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

51. Attached as Exhibit H is a claim chart demonstrating infringement of representative claims of the '529 patent by a representative Accused Product sold by the Defendant, namely, the Threshold Dimmable Edison LED Vintage Style Bulb, Model ST19/LEDG2/TAR, DPCI 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. Exhibit H is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from the Defendant regarding all of the Accused Products it has used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding

the claims of the '529 patent that are infringed and the Accused Products for which The Regents seeks relief.

52. The Defendant's infringement of the '529 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

## CLAIM III: INFRINGEMENT OF THE '464 PATENT

53. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 52 as if fully set forth herein.

54. The Defendant has infringed at least one claim of the '464 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

55. Attached as Exhibit I is a claim chart demonstrating infringement of representative claims of the '464 patent by a representative Accused Product sold by the Defendant, namely, the Threshold Dimmable Edison LED Vintage Style Bulb, Model ST19/LEDG2/TAR, DPCI 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. Exhibit I is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from the Defendant regarding all of the Accused Products it has used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '464 patent that are infringed and the Accused Products for which The Regents seeks relief.

56. The Defendant's infringement of the '464 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

**COMPLAINT**

**CLAIM IV: INFRINGEMENT OF THE '916 PATENT**

57. The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 56 as if fully set forth herein.

58. The Defendant has infringed at least one claim of the '916 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

59. Attached as Exhibit J is a claim chart demonstrating infringement of representative claims of the '916 patent by a representative Accused Product sold by the Defendant, namely, the Threshold Dimmable Edison LED Vintage Style Bulb, Model ST19/LEDG2/TAR, DPCI 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. Exhibit J is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from the Defendant regarding all of the Accused Products it has used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '916 patent that are infringed and the Accused Products for which The Regents seeks relief.

60. The Defendant's infringement of the '916 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, The Regents respectfully requests the Court to enter judgment in favor of The Regents and against the Defendant as to all claims asserted herein as follows:

A.  Granting a judgment that the Defendant has infringed the Asserted Patents in violation of 35 U.S.C. §§ 271(a) and/or 271(g);

B.  Ordering the Defendant to pay to The Regents damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by the Defendant, together with pre-judgment and post-judgment interest and costs as fixed by the Court, in accordance with 35 U.S.C. § 284; and

    C.    Granting The Regents such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Central District of California L.R. 38-1, The Regents demands a trial by jury on all issues so triable.

Dated: July 30, 2019        NIXON PEABODY LLP

By: /s/ Shawn G. Hansen
Shawn G. Hansen

Attorneys for Plaintiff
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

**COMPLAINT**